**GULF PIPE LINE CO. v. WATSON et ux.**
**(No. 11965.)**

Court of Civil Appeals of Texas. Fort Worth.
April 28, 1928.

**1. Damages** ⚏221—**Evidence held to require submission of issues whether landowners could have lessened damages by removal of pipe line by ordinary care and small amount of labor and time and cost thereof.**

In action for damages to land by removal of pipe line constructed under easement, evidence *held* to require submission of issues whether plaintiffs could have lessened damages by use of ordinary care and expenditure of small amount of labor and time to level ground, and what would have been cost thereof.

**2. Trial** ⚏350(1)—**Defendant is entitled to submission of every legal well pleaded defensive issue supported by any probative testimony.**

Defendant is entitled to submission of every legal well pleaded defensive issue in support of which it offers any testimony of probative force.

**3. Damages** ⚏62(3)—**Landowners owed duty to use ordinary care to spend reasonable amount of money and labor to prevent or mitigate damages by removal of pipe line.**

It was duty of persons suing for damages to their land by removal of pipe line, leaving ruts and ditch, to use ordinary care, if necessary, to spend a reasonable amount of money and labor, chargeable against defendant, to prevent or mitigate damages.

**4. Damages** ⚏62(1)—**One injured by another's tort or breach of contract must exercise reasonable care and diligence to avoid loss or minimize damage.**

One injured in his person or property by wrongful or negligent acts of another, whether as result of tort or breach of contract, is bound to exercise reasonable care and diligence to avoid loss or minimize damage, and cannot recover to extent that damages are actively and unreasonably enhanced or due to his failure to exercise such care and diligence.

**5. Damages** ⚏217—**Evidence held to require instruction defining measure of damages to land by removal of pipe line (Rev. St. 1925, art. 2189).**

In action for damages to land by removal of pipe line, evidence as to cost of fixing ditch and ruts perfectly level *held* to require definition of proper measure of damages, under Rev. St. 1925, art. 2189, in connection with submission of issues as to injury done and amount required to compensate plaintiffs.

**6. Trial** ⚏350(6)—**Evidence held to require submission of issues whether defendant removed pipe line across plaintiffs' land in usual way without negligence.**

In action for damages to land by removal of pipe line, leaving ruts and ditch, evidence *held* to require submission of issues whether removal, which defendant was granted right to

make for a valuable consideration paid, was made in usual and ordinary way, and whether plaintiffs' property was flooded because of defendant's negligence.

**7. Mines and minerals** ⚏88—**Corporation, expressly given right to remove pipe line by right of way grant, not providing for damages, is not liable therefor, if it removed line and refilled ditch in customary manner without negligence.**

Corporation expressly given right to remove pipe line by right of way grant, not providing for payment of damages, is not liable for damages, if it removed line and refilled ditch in customary way without negligence.

**8. Damages** ⚏3—**Liability for damages does not arise from mere exercise of legal right, if injury could not have been avoided without abandoning right.**

The general rule is that liability for damages does not arise from the mere exercise of a legal right, though injury results, if it could not have been avoided except by abandoning the right.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Action by Rhea W. Watson and wife against the Gulf Pipe Line Company. Judgment for plaintiffs and defendant appeals. Reversed and remanded.

David W. Stephens, of Fort Worth, for appellant.

McLean, Scott & Sayers, of Fort Worth, for appellees.

CONNER, C. J. This suit was filed by Rhea W. Watson and wife, appellees, owners of a 50-acre farm in Tarrant county, alleging permanent damages in the sum of $1,000 to their land, fences, and crops by reason of the removal of a pipe line which appellant had constructed across their land under an easement. This easement was evidenced by a formal written instrument, which, for a consideration of $41, paid by the Gulf Pipe Line Company, the receipt of which was acknowledged, conferred upon said pipe line company the right "to construct, maintain, and operate lines for the conveyance of oil and gas, * * * and to do whatever may be requisite for their construction, or for the enjoyments of the rights herein granted, including the right of ingress and egress to and from said tract of land for the purpose of laying, maintaining, repairing, and restoring of said additional pipe lines *and for removing of same when desired by the grantee, its successors or assigns.*" (Italics ours.)

The instrument contained no requirement for the payment of damages for removal. The pipe line in question extended east and west along the full one-half mile length of appellees' property some few feet from the north line. Appellees' contention was that their

land had been permanently damaged by reason of wagon ruts and the ditch left by employees of appellant in removing its pipe line. There was also a complaint that the drainage of the land was changed by reason of the ditch left by appellant in removing its line. There was no evidence relating to, nor did appellees seek to recover, damages to their crops.

The appellant replied to plaintiffs' petition by a general demurrer, a general denial, special exceptions, and specially pleaded, in substance, that, if appellees had suffered any damage, the same was due to their own fault and negligence and failure to act, in that any damage could and should have been avoided by the expenditure of a small amount of money and labor.

The case was submitted to a jury on special issues, in answer to which the jury found that appellant, in removing its pipe line, injured the fences of plaintiffs, and that the reasonable costs of repairing the injury done to the fences was $4.50. They further found that plaintiffs' land had not been permanently injured, but was "temporarily injured by the acts of defendant in removing its pipe line," and that $500 would "fairly and reasonably compensate the plaintiff for said temporary injury."

The court required plaintiffs to remit $200, which having been done, judgment was rendered upon the verdict of the jury in favor of plaintiffs for the sum of $304.50, together with costs of suit, etc. From the judgment so rendered, the defendant pipe line company has duly prosecuted this appeal.

[1] Error is assigned to the action of the court in refusing appellant's requested issues 4 and 5, reading as follows:

"(4) Could plaintiff have lessened his damages, if any, by the use of ordinary care and the expenditure of a small amount of labor or time, or both?

"(5) If plaintiff could have lessened his damages against defendant, if any, by the use of ordinary care and the expenditure of a small amount of labor and time, or both, what would have been the cost of such expenditure?"

As already appears in our statement of the case, appellant by its pleadings clearly presented the issues indicated in the special issue quoted, and we think the evidence was such as to constitute error on the part of the court in refusing to submit them.

F. K. Irwin, construction foreman for the Gulf Pipe Line Company, testified that two men in one day could make the ground perfectly level where defendants had left a ditch and ruts. Irwin further testified that the pay of two men for doing the work would be worth $9.

William L. Wise, special investigator for the pipe line company, testified that one good plowing and harrowing of the entire width of the road and ditch would level it entirely. J.

C. Birdsong, employed as a tenant farmer on the land of Lee Scruggs, lying directly north of and adjacent to the property of plaintiffs, testified that it would take him about a day to go into plaintiffs' property with a harrow and straighten it up, and that it would be worth about $8.

[2-4] The right of defendant to have submitted every legal defensive issue well pleaded, in support of which it offers any testimony of probative force, is too well established in this state to require the citation of authorities, and we think it is unquestionably true that it was the duty of appellee to use ordinary care, if necessary, to spend a reasonable amount of money and labor to prevent or mitigate the damages, if any, wrongfully occasioned, the value of such labor and expense being of course chargeable against the defendant.

"It is a fundamental rule that one who is injured in his person or property by the wrongful or negligent acts of another, whether as the result of a tort or as a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize the resulting damage; and that, to the extent that his damages are the result of an active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover; or, as the rule is sometimes stated, he is bound to protect himself, if he can do so with reasonable exertion or at trifling expense, and he can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided." 8 R. C. L. 442, and cases there cited.

This rule is followed by the Texas courts. See T. & S. L. Ry. Co. v. Young, 60 Tex. 201; T. & P. Ry. Co. v. Newton (Tex. Civ. App.) 30 S. W. 475; Ry. Co. v. Becht (Tex. Civ. App.) 21 S. W. 971; Poutra v. Martin (Tex. Civ. App.) 135 S. W. 725; Western Union Tel. Co. v. Johnsey, 49 Tex. Civ. App. 487, 109 S. W. 251; Gulf, etc., Ry. Co. v. McMurrough, 41 Tex. Civ. App. 216, 91 S. W. 320; Williams v. Yoe, 19 Tex. Civ. App. 281, 46 S. W. 659; Clerihew v. Richardson, 27 Tex. Civ. App. 202, 65 S. W. 66; G. H. & D. C. Ry. Co. v. Allen (Tex. Civ. App.) 189 S. W. 765; Avery Co. v. Harrison Co. (Tex. Civ. App.) 254 S. W. 1015; Panhandle & S. F. R. Co. v. Shell (Tex. Civ. App.) 265 S. W. 758.

In the Becht Case, supra, the opinion reads in part:

"If it should appear that the owner of the property, by such reasonable precautions as a person of ordinary prudence would have employed when the water was thrown upon his property, could have diverted it, and limited the amount of the damage to a materially less sum than the difference in value, plaintiff will be entitled to such sum only as it would have cost him to do this."

In the McMurrough Case, supra, the court said that the appellee was required to use reasonable diligence and to exercise ordinary

care to protect himself from damages on account of a wrongful act of the appellant, that any failure to so do would have been contributory negligence on his part, and the appellant, if liable at all, would only be liable for such damages to the crops as could not have been prevented by the exercise of such care and diligence on the part of the appellee.

In the case of Poutra v. Martin, supra, it was held that, where a landlord, renting on shares, agreed to construct an irrigation lateral, he was not liable for damages to the tenant for failure to construct such lateral, where the tenant could have prevented the injury at a little expense, and failed to do so, though the landlord knew of the defects and had an opportunity to repair the same.

We accordingly sustain appellant's first assignment of error and propositions thereunder presenting the issues discussed.

[5] As already noted, the jury, in answer to special issues, found that appellees' land had not been permanently injured, but that it was "temporarily injured by the acts of defendant in removing its pipe line," and that it would take $500 to "fairly compensate the plaintiffs for said injury." In this connection we think that the court should have, as appellant urges, defined the proper measure of damages. Article 2189, Rev. Statutes of 1925, expressly declares that:

"In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

In H. & T. C. Ry. Co. v. Buchanan, 38 Tex. Civ. App. 165, 84 S. W. 1073, Chief Justice Fisher says:

"As to whether damages have been sustained is a question of fact for the jury. The rule to measure these damages is one of law, and it is impossible to conceive how a jury can correctly apply the rule of law in measuring the damages unless the court instructs them as to the rule in its charge. The failure to do this is more than a mere omission, and we regard it as positive error, in submitting a case of this kind, for the charge to fail to inform the jury as to the rule of law that should govern them in determining from the facts the amount the plaintiff might be entitled to recover."

See, also, Ry. Co. v. Worsham (Tex. Civ. App.) 149 S. W. 755; Quahah, A. & P. Ry. Co. v. Galloway (Tex. Civ. App.) 154 S. W. 653; Houston & T. C. Ry. Co. v. Wright (Tex. Civ. App.) 195 S. W. 605; Gulf Pipe Line Co. v. Hurst (Tex. Civ. App.) 230 S. W. 1024.

As stated, the jury found that appellees' land had not been permanently injured, the only injury found being of a temporary character, which the evidence tends to show could have been avoided or lessened for a sum much less than the damage found by the jury. The finding was recognized to be excessive is

indicated by the remittitur, there being no injury to crops or permanent injury found; hence the only damage that could have been properly considered by the jury was the damage to fences and the temporary damage arising, as indicated by some of the testimony, from the failure of appellant to properly refill the ditch after the removal of its pipe line. In the case of Gulf Pipe Line v. Hurst, supra, it is held that the measure of damages for a temporary injury to land is the cost of restoring it to its prior condition, and the value of its use while in its injured state.

Appellees did not produce any testimony as to the value of the use of the property during the time that the same was in its injured state, but appellant did show by witnesses Irwin and Birdsong what the cost of fixing the ditch and ruts perfectly level would be. As stated above, Irwin testified that two men in one day could do the work for $9. Birdsong testified that he could go in with a plow and harrow and level the property up at a cost of $8.

It is held in a number of decisions that the failure to submit the measure of damages, where the issue is raised, constitutes fundamental error. Ry. Co. v. Worsham, supra; Ry. Co. v. Galloway (Tex. Civ. App.) 154 S. W. 653; Ry. Co. v. Weaver (Tex. Civ. App.) 217 S. W. 740. We accordingly sustain appellant's second assignment of error and proposition based thereon, complaining of the court's failure to instruct the jury as to the proper measure of damages for temporary injury to the land.

[6] Appellant requested the court to submit, among others, the following special issues:

"Did the defendant remove its pipe line across plaintiffs' field in the usual and ordinary way?

"Was plaintiffs' property flooded due to negligence of defendant?"

The court also refused requests to give the jury definitions of ordinary care and negligence, and we conclude that the court erred in refusing to submit proper issues on the subject indicated by the special issues requested. As already shown, appellant, for a valuable consideration paid, was granted the right of removing its pipe line, and the evidence in behalf of appellant at least tended to show that the removal had been made without negligence and in the usual and customary manner. The opinion of Judge Stayton in the case of Houston & E. T. Ry. Co. v. Adams, 58 Tex. 476, reads in part as follows:

"Having found that the railway company was, by deed, entitled to a roadway, as a matter of law no damage could accrue to appellees from the proper location and construction of the road on that roadway, however much such location and construction may have diminished the value of the residue of the land. Parties who, by deed, convey the right of way to a railroad, are conclusively presumed to have assented to bear

all loss and take all profit which may incidentally result from the location and construction of the road in proper manner over that roadway.

"The court should have instructed the jury in effect that, if the appellees granted the right of way, no damage could be recovered, either for the use of that right of way, or for the depreciation in value of the other land of appellees, or for any inconvenience to which they might be subjected, provided the same did not result from the want of due care and skill in the location and construction of the road."

[7, 8] We see no distinction between the right of ·a railroad company acquired by a deed and those of a pipe line company acquired by a right of way grant. As already stated, there was no agreement under the terms of the right of way grant under consideration for appellant to pay damages on removal of its pipe line, though the right of removal was expressly given, and, if appellant in fact, in removing its pipe line, exercised due care and removed its pipe line in the customary way without negligence, and refilled the ditch made by the opening thus made in the usual and customary manner without negligence, no damages were recoverable. To hold otherwise would be to prevent appellant from enjoying one of the rights expressly granted to it by its right of way deed. Damages necessarily incident to the enjoyment of the rights granted appellant under the easement and not the result of a want of due care in removing the pipe line and in refilling the ditch in the usual and customary manner without negligence cannot be assessed against appellant without a violation of its legal rights. As said by Chief Justice Stayton in the case of Mexican National Land Co. v. Meddlegge, 75 Tex. 634, 13 S. W. 257:

"The general rule is that liability does not arise from the mere exercise of a legal right, though hurt may result from it, if this could not have been avoided except by abandoning the right."

The rule is laid down in 1 Corpus Juris, pp. 964–966, as follows:

"To constitute an injury, there must be a violation of some legal right, and there are many cases in which a person may sustain actual damage without sustaining any legal injury. In such cases the damage is damnum absque injuria—damage without injury—and no cause of action arises in favor of the party sustaining it against the party by whom it was caused. * * * No cause of action arises from the doing of a lawful act, or the exercise of a legal right, if done or exercised in a lawful and proper manner; the resulting damage, if any, being damnum absque injuria. A liability may, however, arise from the doing of a lawful act, or the exercise of a legal right in a negligent or improper manner; but in such cases the liability is based, not upon the act done, but upon the manner of doing it. While there is an ancient maxim to the effect that one must so use his own property as not to injure another, the maxim in its legal sense has reference, not to the mere infliction of damage, but to the violation of a right, and means only that one must so use his own as not to violate a legal right of another. Every one has a right to the natural use and enjoyment of his own property, and for lawful acts done by one person upon his own property in a lawful and proper manner there is no cause of action, although damage to another may incidentally result therefrom; such damage being damnum absque injuria."

We conclude that the evidence was such as to require the court to submit the proper issues on the subject indicated by the special requests above referred to.

We find nothing else that we think necessary to discuss, but, for the reasons stated, the judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.