## HALLIBURTON OIL WELL CEMENTING CO. v. MILLICAN.

### No. 12168.

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1948.

Rehearing Denied Jan. 28, 1949.

---

**HUTCHESON**, Circuit Judge.

The suit was for loss by negligence of an oil well and lease. The claim was that in doing a squeeze cementing job on the well, defendant had done the work negligently with the result that the well had been ruined and the lease lost.

Defendant denied that it had contracted as alleged by plaintiff and that it was in anywise negligent. It pleaded specially: (1) that under its usual form of contract it rented its cementing equipment and furnished men to deliver and operate it under the supervision of the well owner, and that if the well was lost by negligence it was the negligence of plaintiff and not of defendant; and (2) that the equipment was furnished under its standard agreement that it would not be liable for any loss, damage, or injury to the well resulting from the use of the equipment or the action of any person engaged in doing work on the well.

There was a verdict on special issues, followed by a judgment for the value of the well less salvage, as found by the jury, and defendant is here insisting that the verdict should have been directed for it, and that, if not, the judgment should be reversed and rendered in whole or in part, or at least should be reversed and remanded for trial anew.

In support of its claim that it should have had a directed verdict, appellant puts forward two grounds. One is that the "work order" was the agreement under which the work was done, and it completely relieved defendant from liability. The other is that there was no evidence to support a verdict that the well was lost through negligence, none as to the market value of the well.

Relied on, in the alternative, to reverse and render the judgment in whole or in part are: (1) the finding of the jury that a $30,000.00 well could have been brought in with the expenditure of $2500.00, this takes two forms, (a) that such a finding

Tarlton Morrow, of Houston, Tex., and Robert O. Brown, and Ben F. Saye, both of Duncan, Okl., for appellant.

Birge Holt, of Corpus Christi, Tex., and Dan Moody, of Austin, Tex., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

defeats the recovery altogether, and (b) that it limits it to $2500.00; and (2) the undisputed fact that plaintiff was the owner of only two-thirds of the well, and it was, therefore, error to give him judgment for the whole value of it.

Further, in the alternative, appellant assigns, as grounds for reversal and remand, rulings on evidence and on instructions to the jury.

Appellee insisting that the motion for directed verdict was rightly refused, that it was not error to give defendant judgment for the full amount of the damages; and that the cause was tried and submitted without prejudicial error, urges upon us that the judgment should be affirmed.

We take up first the matter most strongly urged by appellant, that the work was done not under the agreement claimed by plaintiff but under that evidenced by the regular Halliburton work order,[1] and under its terms defendant was relieved from liability. The undisputed evidence shows that the work order claimed by defendant as evidencing the terms of the agreement or dencing the terms of the agreement or

contract under which the work was done was not signed until after the work had been completed, and then it was signed with the notation, "Job incomplete". The question of the effect of the "work order" on defendant's liability takes three forms. The first is whether the terms of the work order were in fact the terms of the contract between the parties, i. e., whether it was the basis on which the work was done. The second is whether, if it was, its provisions for exemption from liability were sufficiently called to the attention of the plaintiff. The third is whether these provisions were legal and valid.

In support of its position that, though the contract was not signed until after the work had been done, it governed the rights of the parties, appellant relies upon the undisputed testimony, including the testimony of plaintiff himself that the terms in the work order were the terms of its standard agreement used on jobs of this kind.[2] Upon the basis of this testimony, appellant, citing many authorities,[3] insists that the work order was the contract, that its ex-

---

[1] "Work Order-Cementing.
Halliburton Oil Well Cementing Co.,
Patented Process,
Duncan, Oklahoma.
District, Houston, Texas. Date 12/5/39
To Halliburton Oil Well Cementing Company:
You are hereby requested to rent to North Millican, Well Owner or Drilling Contractor, your cementing equipment No. 322/613 and furnish men to deliver and operate same under the direction and supervision of the well owner or drilling contractor or his representative to do the following work:
Kind of Work, Squeeze. Depth, 3754.
Size of casing, 2½". Amount and Kind of Cement, 200 Super Trinity.
Condition of Well, Making water. Well No. 1.
Farm, Robinson, Sec. ......, Two.
...... Range ...... County ......
State.
Owned by North Millican.
Well owner or drilling contractor will pay you as rental for the use of such cementing equipment, and service men the sum of $410.00.
As part of the consideration hereof, it is agreed that Halliburton Oil Well Cementing Company shall not be liable or responsible for any loss, damage or injury to said well or responsible from the

use of such cementing equipment, or from the acts of any person engaged in doing such work on the above described well.
It is expressly understood and agreed that Halliburton Oil Well Cementing Company will not be bound by any agreement not herein contained.
NORTH MILLICAN,
Well Owner or Drilling Contractor,
By ..........................,
His Agent."

[2] He particularly relies upon this testimony of Millican; that he knew of this form, having signed it before in connection with other cementing jobs; that he signed it this time without objection and as matter of course; and that, to the question, "You knew at that time that these were the only conditions under which you had ever been able to obtain the Halliburton Oil Well Cementing Company equipment", Millican answered, "Yes, sir.", and further testified, "If you want a cementing job done, you go to Mr. Halliburton and if you want his equipment you have to sign these tickets, that is what I intended to convey."

[3] The ones mainly relied on are: Sun Oil Co. v. Dalzell, 2 Cir., 55 F.2d 63; Restatement of Contracts, Secs. 574 and 575; The Pacific Maru, D.C., 8 F.2d 166; Ringling Bros.-Barnum & Bailey Com-

empting provisions were clear and valid, and that a verdict should, therefore, have been directed for it.

Appellee, on his part, urges upon us that the recitations in the work order, that not Halliburton but plaintiff was in charge of doing the work, were not true, that the work order was not signed until after the work was done, and that the exempting provisions in it were not specifically called to plaintiff's attention. He insists: that the exempting provisions relied on if valid are ambiguous,[4] that such stipulations are not favored and are always strictly construed;[5] that they will not be binding unless specifically called to the attention of the other contracting party;[6] that the evidence made an issue of fact as to whether the work order was the contract; and that the judgment must be affirmed on the findings of court and jury.

 We agree with appellant: that there is no public policy which forbids parties as between themselves from contracting against liability and that if it was established by undisputed evidence that work in this case was contracted for on the terms of the work order and that the contract for the work was entered into by plaintiff with full knowledge of the exemptions from liability the work order contained, a verdict should have been directed for it. But we agree with appellee: that the evidence presented an issue of fact upon whether it was the agreement and upon whether plaintiff entered into it with knowledge of its terms exempting defendant from liability; and that it was not error to refuse a directed verdict on this ground. We agree with appellee, too, that a verdict should not have been directed for defendant on the other grounds it put forward, that the evidence was insufficient to raise the issue of negligence and insufficient to show the value of the well. We cannot agree with appellee, however, that the verdict and judgment must be affirmed.

 In the submission of the case to the jury, defendant's contentions, as to the work order and its effect upon the case, that its terms were in reality the terms of the contract, and that they completely relieved defendant from liability, were entirely ignored, and the cause was submitted as though the issues arising on it were absent from the case. Thus, though the defendant requested an issue as to whether Millican knew that Halliburton required written work orders in connection with the squeezing of oil wells, the court refused to submit that or any similar issue. Though, too, the defendant requested an issue as to the authority of the person with whom plaintiff claims to have made his contract, and, in connection therewith, instructions as to the effect of the work orders, the district judge declined to submit this or any similar instruction or issue which would have given defendant the benefit of this defense.

The undisputed proof establishing that Halliburton's custom in contracting was to contract only in the terms of the work order, it was essential in order for plaintiff to recover that the jury find: that the real contract was the agreement for maintaining equalized pressures referred to in Special Issue No. 1, and that it was made by one having real or apparent authority to make it; that the work order was not the contract here, or if it was, that its terms exempting defendant from liability were not known or specifically called to the attention of the plaintiff and agreed to by him. The most that can be made for plaintiff out of the facts and circumstances in this case is that the person talking to him sent the equipment out, or else reported the request for it to someone else in the morning who did send it. If this proof standing alone was sufficient to support a finding of authority, it certainly did not establish authority as matter of law.

In view of our conclusion that the judg-

---

bined Shows v. Olvera, 9 Cir., 119 F.2d 584; Missouri, K. & T. v. Carter Bros., 95 Tex. 461, 68 S.W. 159; Eastern States Pet. Co. v. Port Terminal Co., Tex.Civ. App., 161 S.W.2d 539.

[4] Herndon v. Halliburton, Tex.Civ.App., 154 S.W.2d 163.

[5] Fairfax v. Hadary, 4 Cir., 151 F.2d 939.

[6] California & Hawaiian Sugar Refining Corp. v. Harris County, D.C., 27 F. 2d 392.

ment must be reversed for errors in failing to properly submit the issues arising on the work order, it will not be necessary for us to discuss any other claimed errors except those that may arise on another trial. These are: the jury having found that with the expenditure of $2500, a $30,000 well could have been made in the 3300 foot sand, it was error to enter judgment for plaintiff for the value of the lost well; that since Millican owned only two-thirds of the lease and well, it was error to enter judgment for the entire value of it; and that it was error to exclude work orders on other jobs which Millican had signed.

We agree with appellee that the jury findings on the issue of the completion of a well in the 3300 foot strata neither exonerated defendant from its responsibility for the loss sued for, nor reduced plaintiff's recovery to $2500.00. Under settled law,[7] while one who has been damaged must take reasonable steps to minimize the damages, he is not required to make unreasonable personal outlays of money or expend money in risky ventures. Whether the expenditure of $2500 would have been a reasonable step to take was a question for the jury and the jury did not find that it was. On another trial the issues on minimizing damages should be submitted to the jury under appropriate instructions.

Upon the second contention, we agree with appellant. There was proof and a finding as to the cost of the well, but this proof and finding was only for the purpose of proving the value of the well.[8] The suit was not for the cost of the well but for the loss of it, and its value when lost was the measure of plaintiff's damage.[9] The answer to question #7 was that the reasonable market value was $20,000. Of this well, and its value, plaintiff owned two-thirds. Other persons not making claims owned one-third. Plaintiff did not recover for them. They testified that they were making no claim. Plaintiff did not recover on their cause of action because he had not acquired it. If, on another trial, plaintiff obtains judgment, it should be not for the whole but for two-thirds of the value of the well.

In view of plaintiff's contention, that the terms of the contract were not clear, and that they were not precisely called to his attention, the exclusion of other work orders signed by Millican was error. They were admissible both upon the issue of Halliburton's manner of doing business and of plaintiff's complete familiarity with it. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

McCORD, Circuit Judge, dissenting.

[7] American Smelting & Refining Co. v. Riverside Dairy & Stock Farm, 8 Cir., 236 F. 510; Fort Worth & Denver City Railway Co. v. Daggett, 87 Tex. 322, 28 S.W. 525; Gulf Pipe Line v. Watson, Tex.Civ.App., 8 S.W.2d 957; Walker v. Salt Flat, Tex.Civ.App., 64 S.W.2d 1015; Southwestern Gas & Electric Co. v. Stanley, Tex.Civ.App., 45 S.W.2d 671.

[8] To the objection to a question of plaintiff's counsel, that how much money had been invested in drilling plaintiff's well was not a proper measure of damages, plaintiff's counsel stated: "I am offering it, Your Honor, not on the measure of damages. I am offering it on the question of the comparative cost of this work with a new trial, or that of a new well."

[9] Taylor v. Catalon, 140 Tex. 38, 166 S.W.2d 102; American Glycerine Co. v. Kenridge Oil Co., Tex.Civ.App., 295 S. W. 633; United States Torpedo Co. v. Liner, Tex.Civ.App., 300 S.W. 641; International-Great Northern R. Co. v. Casey, Tex.Com.App., 46 S.W.2d 669, 670.